UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JOHN YEATMAN and ELEANOR E. YEATMAN, individually and on behalf of all similarly situated individuals,

Plaintiffs,

v.     407CV081

D.R. HORTON, INC., and DHI MORTGAGE CO.,

Defendants.

## ORDER

A fraudulent market is not a free market. To ensure a free, competitive market in residential real estate, statutes[1] and regulations[2] seek to prevent tying arrangements, kickbacks, fee splitting, hidden fees, etc. *See Friedman v. Market Street Mortg. Corp.*, ___ F.3d ___, 2008 WL 739704 (11th Cir. 3/20/08); *Krupa v. Landsafe, Inc.*, 514 F.3d 1153, 1155 (11th Cir. 2008); *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008); *Mallory v. GMS Funding, LLC*, 2008 WL 276578 (S.D.Ala. 1/30/08) (unpublished); 12 U.S.C. § 2607(b).

In this proposed class action case, plaintiffs John and Eleanor Yeatman allege that, in 8/06 they agreed to purchase a home from defendant builder D.R. Horton, Inc. ("DRHI"), using mortgage financing provided by DRHI's affiliate (and co-defendant), DHI Mortgage Co., Ltd. ("DHIM"). Their purchase agreement provided them with an option to have DRHI pay some closing costs *if* the Yeatmans used DHIM as their mortgage lender. Doc. # 24 (Amended Complaint) exh. 1 ("Home Purchase Agreement 51811-0246") at 1 ¶¶ iv, v; *id.* ("Builder's Concession Addendum # 3 - SAV" stating: "[B]uyers are not required to use the affiliated company as a condition of Buyers' purchase of the Property or Buyers' access to settlement services in connection with the purchase of the Property"); *id.* ("Notice of Seller's Business Affiliations" stating: "You are not required to use [DHIM] as a condition of your purchase of the Property from [DRHI] or as a condition of your application for, or settlement of, a mortgage loan on the Property in connection with your purchase").

Plaintiffs now complain, however, that despite contract wording that gave them the *option* to use -- in exchange for a financial incentive that lowered the net cost of their home purchase[3] -- DHIM as their mortgage lender, defendants

> expressly conditioned and "tied" [p]laintiffs' purchase of their new home to their concession to finance the purchase of the home through [d]efendants. This "tie-in" was accomplished by manipulating the price

---

[1] Primarily the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607 *et seq*.

[2] *See, e.g.*, 24 C.F.R. § 3500.14 ("Prohibition against kickbacks and unearned fees").

[3] The agreement specified that if the buyers use DHIM as their mortgage lender and satisfied other conditions,

> Seller agrees to pay on behalf of Buyers such discounts fees and other closing costs in connection with the mortgage loan that are charged to Buyers by DHI MORTGAGE, and any other settlement service providers described below in paragraph 2 equal to the greater of 6% of the mortgage loan amount.... Buyers may apply this amount in payment of the loan origination fee, and, if applicable, underwriting fee, processing fee, and other lender fees, title insurance premiums, escrow and related fees, appraisal fee....

Doc. # 24 exh. 1 ("Builder's Concessions Addendum # 3) at 1¶ 1.

of [p]laintiffs' new home in a manner which would result in [p]laintiffs paying several thousand dollars more for their home if they did not concede to the use of [d]efendants' affiliate lender.

Doc. # 30 at 1-2; *see also* doc. # 24 ¶¶ 19-29.

Plaintiffs contend that this "tying" injects an impermissible "required use"[4] into the deal, thus constituting economic coercion simply because they would *not* have gotten the net discount had they used an unrelated lender.

Unsurprisingly, the defendants move to dismiss this case both on standing and failure-to-state a claim grounds, thus invoking F.R.Civ.P. 12(b)(1) and 12(b)(6). Doc. # 9. Standing analysis can take a court into Rule 12(b)(1) territory, *see, e.g., Gonczi v. Countrywide Home Loans, Inc.,* 2008 WL 835251 (11th Cir. 3/31/08) (unpublished), but here the "standing" arguments collapse into an examination of the elements of this case, so Rule 12(b)(6)[5] is the better rule to use here.[6]

Plaintiffs cite a variety of aging HUD materials (letter opinions, etc.) from past years to support their argument, doc. # 30 at 4-10, but the Court finds telling HUD's own comments on its *current* website, under a section titled "Frequently Asked Questions About RESPA":

> **Question:** A builder is offering to pay my closing costs or give me an upgrade package only if I agree to use his

---

[4] U.S. Department of Housing and Urban Development (HUD) regulations prohibit arrangements where consumers are required to use a specified service in order to buy another service or product:

> Required use means a situation in which a person must use a particular provider of a settlement service in order to have access to some distinct service or property, and the person will pay for the settlement service of the particular provider or will pay a charge attributable, in whole or in part, to the settlement service.

24 C.F.R. § 3500.2 (2007). However,

> the offering of a package (or combination of settlement services) or the offering of discounts or rebates to consumers for the purchase of multiple settlement services does *not* constitute a required use. Any package or discount must be *optional* to the purchaser. The discount must be a *true discount* below the prices that are otherwise generally available, and must not be made up by higher costs elsewhere in the settlement process.

*Id.* (emphasis added). This regulation is derived, incidentally, from the RESPA statutory scheme itself. Under that scheme, a plaintiff must establish, for example, that the seller "require[d] ... as a condition to selling the property [that the buyer use a] particular title company." 12 U.S.C. § 2608(a).

[5] This Court will apply the Rule 12(b)(6) standards set forth in *Blackburn v. Calhoun,* 2008 WL 850191 at * 3-4 (N.D.Ala. 3/4/08) (unpublished).

[6] As another court explained:

> A challenge to standing is generally treated as an issue of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). However, questions of statutory standing may be analyzed under Rule 12(b)(6). *See Morrison v. Marsh & McLennan Cos.,* 439 F.3d 295 (6th Cir.2006). Because Defendants argue that Plaintiff does not have statutory standing to sue under TILA or RESPA the Court will analyze the instant motion under Rule 12(b)(6).

*Binney v. ABN Amro Mortg. Group, Inc.,* 2006 WL 2310264 at * 1 (E.D.Mich. 8/9/06) (unpublished).

mortgage company. Is this legal under RESPA?

**Answer:** Yes. While a builder cannot require you to use a mortgage company with whom he is affiliated, a builder is allowed to offer you a discount if you use a specific company. Under RESPA, the builder cannot charge you more for the home if you do not use his affiliated mortgage company.

http://www.hud.gov/offices/hsg/sfh/res/rescon su.cfm (site as of 4/23/08). There is no allegation here that DRHI threatened to charge more for the subject home if the Yeatmans failed to use DHIM's mortgage services, or that DRHI in any other way attempted to foist a tying arrangement upon them. The Yeatmans faced the same price for the home if they used another mortgage lender.

HUD's implementing regulation defines "required use" as an instance "in which a person *must* use a particular provider of a settlement service in order to have access to some distinct service or property," 24 C.F.R. § 3500.2 (emphasis added); *see also supra* n. 4. But

> HUD palpably sought to permit certain types of incentives to use affiliated settlement services. It specifically excluded from its definition of "required use" offering "discounts or rebates to consumers for the purchase of multiple settlement services" as long as those discounts and rebates were "optional to the purchaser" and were a "true discount below the prices that are otherwise generally available, [and not] made up by higher costs elsewhere in the settlement process."

*Capell v. Pulte Mortgage L.L.C.*, 2007 WL 3342389 at * 6 (E.D.Pa. 11/7/07) (unpublished) (cite omitted). This interpretation, in turn, is now reflected on HUD's own website, cited *supra*.

Little else need be said here, as other courts have competently analyzed the law to conclude that similar plaintiffs stated no claim, and this Court agrees with them. *See Capell*, 2007 WL 3342389 at * 6-8 (no "required use" where builder/seller offered $25,000 "closing cost" credit for using affiliated settlement service providers); *Spicer v. Ryland Group, Inc.*, 523 F.Supp.2d 1356 (N.D.Ga. 2007) (offering a $10,500 discount on approved settlement costs incurred through use of specified providers without more was not "required use"); *Geisser v. NVR, Inc.*, 2001 WL 36016177 (M.D.Tenn. 5/15/01) (unpublished) (seller's optional contributions to closing costs for use of specified settlement service providers was not "required use").

As in *Capell*, the Yeatmans cite nothing other than the "pressure" of a discount that no rational buyer would ignore and the fact that no other vendor offered it. That argument fails:

> The crux of Capell's argument is that the credit was so big she could not turn it down, so she had to use [the home builder/seller's] specified service providers, which she otherwise would not have done. This alone cannot be enough to establish that the closing cost credit constituted "required use" of the settlement service providers. Capell has not alleged that the sale of the home was ever conditioned upon her using the settlement service providers, nor has she averred that she expected to get that credit for any other reason. For an act to be "required" there must be some

3

element of coercion-as implied in a Corleone-type "offer he can't refuse"-and it must be alleged in the complaint.

*Capell*, 2007 WL 3342389 at * 8.

Accordingly, the Court **GRANTS** the Rule 12(b)(6) motion (doc. # 27) of defendants D.R. Horton, Inc. and DHI Mortgage Co., Ltd. to dismiss this case with prejudice. The parties' oral argument requests (doc. ## 29, 32) are **DENIED**. Plaintiffs John and Eleanor Yeatman's Complaint therefore is **DISMISSED WITH PREJUDICE**.

This __23__ day of April, 2008.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA